## MAXWELL v. EASON.

In an action against a ginner of cotton, for cotton lost by fire, the plaintiff may prove the usual custom of ginners as to carrying fire about their gin houses; also the custom of the witness, if conformable to the general usage.

THIS was an action of assumpsit. brought by the plaintiff in error, who was also plaintiff below in the County Court of Madison county, against Eason, to recover the value of a parcel of cotton delivered by the former to the latter as owner of a cotton gin, and which was destroyed by fire. There was at February term, 1827, a verdict for the defendant. The facts on which the decision of this Court was made, appear in the following opinion of a majority of the Court, delivered

### By JUDGE SAFFOLD.

THE declaration charges, that the cotton was delivered to the defendant in the way of his trade or employment as gin holder, and under a contract that he should gin and bale the same for a reasonable price or reward, and that

he should take due and proper care of the same, until it should be redelivered to the plaintiff. But that by means of the negligence and improper conduct of the defendant, the cotton was wholly lost.

On the trial below, as shewn by the record, it was proved that the defendant's gin house, containing the plaintiff's cotton, as also some of his own, was consumed by fire; that this happened by the falling of an open lamp among the cotton, from the hand of the defendant's son, while proceeding by his order, to hang up in the gin house a pair of steelyards; also, that the defendant was himself in the habit of carrying the open lamp into the gin house while containing cotton. It further appeared, that the son who dropped the fire, was about fourteen years of age; that the steelyards were to be hung on a nail, inside the door, from six inches to two feet from the margin thereof; that the boy had frequently been known to hang up and take down the steelyards without entering the house; that at this time the house was full of cotton, and that the defendant had said the fire was communicated by his son's falling at the gin house door when in the act of going in to hang up the steelyards.

Evidence as above stated having been introduced, the plaintiff offered as a witness, one Browning, a gin holder in said county, and propounded to him the following questions: What is the general custom of gin holders, in regard to carrying light about their gin houses when they contain cotton? What is your custom in this respect? Is it customary among gin holders to carry, or permit to be carried, in their gin houses, when they contain cotton, an open lamp with oil to afford light?

These questions being objected to by the defendant's counsel, were excluded by the Court. The exclusion of this testimony is the only material assignment of error.

Here it is to be understood that the bailment was for the mutual benefit of the parties. The plaintiff wishing his cotton ginned and baled preparatory to market; the defendant, a gin holder and undertaker in such employment, agreed to receive the same and prepare it accordingly, for a reasonable *reward*. This was a bailment which required of the bailee ordinary care, and subjected him to responsibility for any loss that might happen from "*ordinary neglect*." *Ordinary neglect* is the *omission* of that care which every man of *common prudence*, and *capable of governing a family*, takes of *his own* concerns. [a]

JULY 1828.

Maxwell
v.
Eason.

a Jones on Bailment 19.

The true principle is said to be, where one man acts gratuitously for another, whether the business in which he acts does or does not import particular skill and knowledge, if he acts *bona fide* to the best of his ability, and with as much discretion as he would exercise in his own affairs, he is not liable to an action for any loss which ensues; [a] but "where a party receives a *reward* for the performance of certain acts, he is by law answerable for neglect on his part. The payment of the money may be considered as an assurance for the due performance of what he undertakes;" and it is held, as a general rule, that "where a person professes himself to be of a certain business, trade, or profession, and undertakes to perform any act which relates to his particular employment, an action lies for any injury resulting, either from *want of skill* in the business or profession, or for negligence or carelessness in his conduct." [b] In connexion with the same doctrine, the same author says, *the question of negligence is one of fact for the jury.* Then, the question of fact for the determination of the jury was, whether the defendant used ordinary care, or that degree of caution which is due from a man of common prudence in the same situation, or in like employment. The necessary and usual caution for the security of gin houses, and how far it is deemed prudent to risk fire in or near them, is not presumed to be equally known to all persons. If it were so to be regarded, the evidence was inadmissible. But it is presumed prudent gin holders have something like an uniform practice in this respect; if so, every one who sends his cotton to a gin, is entitled to expect the same care and prudence for the security of this property. [c] Then, to enable the jury to decide whether this defendant used that degree of care which is usual with a majority of prudent men in the same business or trade, evidence of the custom of such persons generally was relevant and admissible, and should have been permitted to go to the jury. The acts of the defendant's son in his immediate employment, and under his direction, can only be regarded as the acts of the defendant himself. The evidence respecting the *individual* custom of the witness as a gin holder, unless it corresponded with the general usage, was immaterial; but the usual custom of prudent men in that respect, including that of the witness, was legal tes-

a 2 Starkie 972.

b 2 Starkie 973.

c 2 Starkie 453.

timony; and for the rejection of which, a majority of the Court think the judgement below must be reversed and the cause remanded.

JUDGE TAYLOR not sitting.

CLAY and M'CLUNG, for the appellant, cited Jones on Bailment; 2 Starkie 973; 1 Washington 10; 1 Call 147; 5 Munford 483; 2 Caines 32.

THORNTON, for the defendant.