[Montgomery St. Ry. Co. v. Lewis.]

# Montgomery St. Ry. Co., *v*. Lewis.

*Action for Injury to Passenger.*

(Decided June 30th, 1906.   41 So. Rep. 736.)

1. *Street Railroads; Operation; Regulation; Statutes.*—Sec. 3441, Code 1896, requiring all trains to stop a hundred feet from a crossing, is applicable to street railways.

2. *Carriers; Street Railroads; Injuries to Passenger; Negligence; Pleading.*—A complaint by a passenger on a street car for injuries in a wreck at a railroad crossing, which alleges that those operating the car negligently ran the car on the railroad crossing without first knowing that the track was clear, and that by reason of such negligence plaintiff was injured, was not demurrable for an insufficient attempt to particularize the negligence; the said complaint sufficiently alleging a violation of Sec. 3441, Code 1896.

3. *Same; Injury to Passenger; Willful Injury; Evidence.*—The evidence stated and held to afford inferences from which the jury might find that the servants in charge of the car on which plaintiff was a passenger were guilty of a willful violation of Sec. 3441, Code 1896.

4. *Same; Instructions.*—An instruction asserting that there was no duty on the operatives of the car to come to a full stop with the car before going upon the railroad crossing, unless they knew, or had reasonable cause to know, that a train was approaching, is erroneous, as contravening the express requirements of § 3441 Code 1896.

5. *Same.*—A charge which asserts that it was the duty of the persons in charge of the train to bring the train to a full stop within not less than one hundred feet of the street car crossing, and that the operatives in charge of the street car had a right to assume that the said train of cars would be so stopped, is erroneous and properly refused, the same being misleading, and ignores the duty of the car operatives to stop as required by § 3441, Code 1896.

6. *Pleading; Demurrer; Pleadings Good for Certain Purposes; Negligence.*—It is not error to overrule a demurrer to a count in the complaint which is good as a count in simple negligence,

    although in said count it is insufficiently attempted to allege willful or wanton negligence.

7. *Appeal; Assignments of Error; Waiver.*—This court will treat as waived an assignment of error not insisted on in appellant's argument and brief.

APPEAL from Montgomery City Court.

Heard before HON. A. D. SAYRE.

This was an action by Lewis, a passenger, for damages for injury received in a collision between one of defendant's street cars and some Louisville & Nashville freight cars at a crossing on grade. The seventh count of the complaint is set out in the opinion. The fifth count is in words and figures as follows: "Plaintiff claims of the defendant, the Montgomery Street Railway Company, a corporation, $3,000 as damages, for this: that on, to-wit, the 1st day of July, 1904, the defendant was engaged in operating by electricity a street railway in the city of Montgomery as a common carrier of passengers, and one of the tracks owned, used, or operated by the defendant crossed a railroad track in what is known as 'Vesuvius,' in said city, and the servant, agent, employe, motorman, or conductor in charge of one of defendant's cars, and upon which plaintiff was a passenger, knew that a railroad car was being operated upon said railroad track, and that to run said street car upon the said railroad crossing would naturally and probably result in a collision between the said car upon which plaintiff was a passenger and a railroad car, locomotive, or train, and notwithstanding such knowledge, and the probable and natural result of going upon the railroad track, the said servant, agent, employe, motorman, or conductor of the defendant, with a present consciousness that injury to plaintiff would probably result, wantonly or willfully ran said car upon which plaintiff was a passenger upon the said railroad track and it collided with the railroad car or train, and by reason of the willful or wanton conduct on the part of the servant, agent, employe, motorman, or conductor of defendant the plaintiff was greatly injured, his hip was injured, his head was injured, his back was injured, his arm was injured, his body was bruised, he was oth-

erwise injured, he was internally injured, his hearing was impaired, he was permanently injured, he suffers and continues to suffer much mental anguish and physical pain, and was put to great expense in employing a doctor and buying medicines, and was prevented from tending to his business, all to his great damage." The eighth count is the same as the fifth count down to the words "willfully or wantonly," where they occur therein. The averment which follows is: "Willfully or wantonly stop said car upon the said track of the railroad, knowing at the time thereof that his action in so stopping said car upon said railroad track would probably result in disaster, and plaintiff further avers that a train of cars on said railroad track collided with the same car upon which plaintiff was a passenger, and thereby the said car upon which plaintiff was a passenger was violently thrown from said track and plaintiff was greatly injured." The injuries alleged are the same as in the fifth count. The facts are sufficiently stated in the opinion, as are the demurrers.

There were a number of charges requested, but it is only necessary here to set out the following: Charge 12: "The court charges the jury that it was the duty of the operator in charge of the train of cars on the Seaboard Air Line Railway to have brought their train to a full stop before attempting to cross defendant's track, and the operatives of defendant's street car had the right to assume that the said train of cars would be so stopped, and to act on that assumption, unless the facts and circumstances were such as to reasonably indicate that said train would not be stopped." Charge 13: "The court charges the jury that there was no duty upon the operatives in charge of the street car which collided with the train of cars on the occasion testified about to bring said car to a full stop before crossing the railroad there, unless they knew or had reasonable cause to know that a train was approaching." The twelfth assignment of error is in the following lauguage: "The court erred in sustaining plaintiff's objection to the question asked the witness Watts by defendant's counsel: 'What the plaintiff said in reference to the railroad company at the time of the accident?' Defend-

ant's counsel stated that the evidence asked for by the question was part of the res gestae, and that he expected to show that the plaintiff then and there remarked that the railroad company, referring to the steam road, ought to pay some damages." There was verdict and judgment for $150.

STEINER, CRUM & WEIL, for appellant.—The charge of wilful or wanton acts is not supported by the evidence in this case. Those in charge of the car had a right to assume that the freight train crew would obey the law in approaching the crossing.—*Powell v. Birmingham So. R. R. Co.*, 136 Ala. 232. On the same authority the affirmative charge should have been given as should charges No. 12 and 13. The demurrers to counts 5 and 8 should have been sustained.—*L. & N. R. R. Co. v. Mitchell*, 134 Ala. 261; *M. & C. R. R. Co. v. Martin*, 117 Ala.; *L. & N. R. R. Co. v. Anchors*, 114 Ala. 492.

HILL, HILL & WHITING, for appellee.—Sections 3441 and 5371 are applicable to the operation of street railroads.—*L. & N. R. R. Co. v. Anchors*, 114 Ala. 492; *Birmingham So. R. R. Co. v. Powell*, 136 Ala. 241. The counts of the complaint state a good cause of action.—*Southern Ry. Co. v. Bryan*, 125 Ala. 297; *E. T. V. & G. R. R. Co. v. Carloss*, 77 Ala. 446. The court rightly refused the appellant's requested charges.—*R. & D. R. R. Co. v. Greenwood*, 99 Ala. 501; *Moore v. N. C. & St. L. R. R.*, 137 Ala. 503.

DENSON, J.—Action by T. L. Lewis, plaintiff, against the Montgomery Street Railway Company, defendant, to recover damages on account of personal injuries alleged to have been received by the plaintiff while a passenger on one of the defendant's street cars, in a collision which occurred between said car and a freight train of the Louisville & Nashville Railroad Company at a point on Chandler street in the city of Montgomery where the street railway of the defendant and the railroad of the Seaboard Air Line Railway cross each other at grade. The plaintiff obtained a judgment in the city court, and the defendant appealed.

The complaint is composed of ten counts. Demurrers were filed to each count, all of which were overruled by the court. The action of the court in overruling the demurrers to the complaint is assigned as error, but the only assignments in this respect which have been insisted upon in the argument of appellant's counsel are those which relate to the fifth, seventh, and eight counts. The seventh count is in this language: "Plaintiff claims of the defendant, the Montgomery Street Railway Company, a corporation, $3,000 damages, for this: that on, to-wit, the 1st day of July, 1904, the defendant was engaged in operating by electric force a street railway as a common carrier of passengers in the city of Montgomery, and one of the lines owned, used, or operated by the defendant ran into what is known as 'Vesuvius,' and crossed a railroad track in said Vesuvius, and plaintiff avers that the motorman, agent, servant, or employe in charge of one of the defendant's cars upon which plaintiff was a passenger then and there negligently ran said car upon the said railroad crossing without first knowing that said track was clear; that by reason of such negligence, the plaintiff was injured," etc. The foregoing is sufficient of said count to present intelligibly the question raised by the demurrer. The point of the demurrer is that the averment of negligence is insufficient on account of its generality. That the averment that the motorman negligently ran said car upon the said railroad crossing without first knowing that said track was clear is the averment merely of a conclusion. The argument with respect to this last point is that the averment was an attempt to particularize the negligence, and where this method is resorted to sufficient facts should be stated from which the court would be able to determine that the defendant was guilty of negligence. Without the use of the words, "without first knowing that said track was clear," in said count, under an unbroken line of decisions made by this court, the count would be sufficient.—*Leach v. Bush*, 57 Ala. 145; *Armstrong v. Montgomery St. Ry. Co.,* 123 Ala. 233, 26 South. 349, and authorities cited in the last case. The statute, section 3441 of the Code of 1896, imposes upon engineers and conductors of

trains the duty of causing their trains when approaching a railroad crossing to come to a full stop within 100 feet of such crosing and of not proceeding until they know the way to be clear. This section has been held by us to apply to street railroads.—*L. & N. R. R. Co. v. Anchors,* 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116; *Birmingham Sou. Ry. Co. v. Powell,* 136 Ala. 241, 33 South. 875. Certainly the count, if sufficient without the averment referred to, was not detracted from by the averment. Moreover, the averment that the motorman negligently ran the car upon the said railroad crossing without first knowing that the track was clear, is not the averment of a conclusion, but it is the averment of a specific fact. It was not necessary to state facts in detail from which said knowledge could have been determined by the court. Running the car on the crossing without first knowing the track was clear would constitute culpable negligence.—*Sou. Ry. Co. v. Bryan,* 125 Ala. 297, 28 South. 445; *B'ham Sou. Ry. Co. v. Powell, supra.* The averment was amply sufficient to put the defendant on notice of what it was to defend against. The demurrer was properly overruled.

Demurrers to the fifth and eighth counts raise the question of sufficiency of those counts as counts charging willful or wanton injury. If it should be conceded that the counts are insufficient as counts for willful or wanton misconduct, yet they are good as counts for simple negligence. This being true, the trial court will not be reversed for overruling the demurrer to them based on the theory of their insufficiency as counts for wantonness or willfulness.

The third count of the complaint was eliminated by a charge given by the court at the request of the defendant. The defendant pleaded the general issue to all the counts and contributory negligence to the first, second, and seventh. The tenth assignment of error is predicated upon an exception reserved to a part of the oral charge of the court to the jury, but it has not been insisted upon in the argument and brief of appellant's counsel. We therefore pass it without consideration.

At the conclusion of the evidence many charges in writing were requested by the defendant, 22 in all. Of

the charges requested 7 were given and 15 were refused. Ten of the charges requested were in form the general affirmative charge with respect to each count in the complaint. The charge asked with respect to the third count was given. We have been unable to discover any evidence of contributory negligence in the record, and, though pleaded, it seems not to have been an issue on the trial, so far as the evidence is concerned. Counsel for appellant in their brief admit that the servants of the defendant may have been guilty of simple negligence in attempting to make the crossing. In keeping with this admission there is no insistence in their brief upon any error assigned with respect to charges applicable to the counts, which aver simple negligence. But the insistence is that there is an absence of evidence to support the counts which aver wantonness and wilful conduct. The evidence without conflict showed that the defendant was a passenger on one of defendant's cars; that the car was being operated by the defendant through its servants, a motorman and a conductor, at the time of the injury; that the car was en route to Riverside, in the city of Montgomery; the defendant's track and that of the Seaboard Air Line Railway cross each other on Chandler street in one of the suburbs in the city of Montgomery known as "Vesuvius"; that when defendant's car on which plaintiff was a passenger reached the said crossing, about 1 o'clock in the daytime, a collision occurred between it and a freight train which was being operated over the Seaboard road by the Louisville & Nashville Railroad. The freight train was being pushed by an engine along the track in a northerly direction. The evidence further showed without conflict that the car of the defendant had run onto the crossing, and the motorman had reversed the power in an effort to get off, and the car stopped on the crossing; that there was a curve in the Seaboard road in the direction from which the freight train was approaching; that the crossing and the curve extended to the crossing, but the street car line was straight at the crossing. The motorman testified that he knew the line and that crossing, knew the Seaboard had a switch at that crossing, and knew that the Seaboard and the

Louisville & Nashville road switched cars across there constantly. Evidence adduced by the plaintiff tended to show that there was no stop made by defendant's car before it ran into the crossing, but that it was running at a rapid rate of speed—as expressed by the first witness for the plaintiff, "the car was coming full tilt." The evidence for the plaintiff further tended to show the freight train was approaching from around the curve, and that, on acount of some staves that were piled at the crossing, view of the railroad was obstructed both ways until the crossing was reached. There was a man stationed on the end car of the freight train as it approached the crossing, and the evidence tended to show that the whistle of the engine of the freight train was blown and that the train came to a full stop within 100 feet of the crossing. The evidence as to whether the freight train stopped was in conflict. Evidence adduced by the defendant tended to show that the car was stopped within 6 or 8 feet of the crossing; that the motorman and conductor were on the platform of the car next to the crossing. Both of them testified that they stopped and looked up and down the track, saw no train coming, and the conductor signaled the motorman to proceed. Neither of them dismounted, but trusted to their view from the front platform of the car. The motorman testified that he could see up the track from where the car was stopped 50 yeards, but could not see around the curve. The conductor testified that the car was about 4 or 5 feet from the crossing when it stopped; that he went out on the front platform, looked up and down the track, and signaled the motorman to go ahead; that the motorman released the brakes and begun to move along, was barely moving, and at that time some freight cars came down the line; that the motorman was afraid he could not get across the track, and released the brakes, reversed the car, and tried to back off, and the freight car struck about 6 inches of the front of the car.

The weight to be accorded the evidence was a question peculiarly within the province of the jury. If the evi-

dence adduced by the plaintiff was worthy of belief, from it the jury were authorized to infer that there was a willful violation of the statute (section 3441 of the Code of 1896) in the manner in which the evidence tended to show the approach to the crossing was made by the servants of the defendant in charge of the car. Further, from the testimony, coupled with the testimony of the motorman, showing his knowledge of the facts and conditions of the crossing, the frequent use of it by the railroads, and the probability that a train would pass it, or was liable to use the crossing, at any time, we think the jury was authorized to infer that the motorman was guilty of a reckless indifference to probable consequences of harm and injury to others; that his acts were performed with a knowledge of facts and conditions that rendered the same greatly dangerous to the lives of others, and a probability that they would result injuriously. "This degree of recklessness, with a conscious knowledge of its probable harmful consequences, constitutes that wantonness which in law finds its equivalent in point of responsibility to willful or intentional wrong."—*L. & N. R. Co. v. Webb,* 97 Ala. 308, 12 South. 374; *A. G. S. R. R. Co. v. Anderson,* 109 Ala. 299, 19 South. 516; *Southern Ry. Co. v. Bryan,* 125 Ala. 297, 28 South. 445; *Birmingham Sou. Ry. Co. v. Powell,* 136 Ala. 231, 33 South. 875; *Sou. Ry. Co. v. Jones,* 143 Ala. 328, 39 South. 118.—*So. Ry. Co. v. Bonner,* 141 Ala. 517, 37 South. 702. The charges were properly refused.

Charge 13, refused to the defendant, contravenes the requirement of the statute (section 3441 of the Code of 1896). Hence, no error in its refusal.

Charge 12 was misleading in its tendencies. Besides it ignores the duty imposed upon the defendant by the statute.—*Richmond & Danville R. R. Co. v. Greenwood,* 99 Ala. 501, 14 South. 495; *B'ham Sou. Ry. v. Powell, supra.*

There is no merit in the twelfth ground of the assignment of error, which presents for review the ruling of the court on the admissibility of evidence.

We have considered all the assignments of error that have been insisted upon, and, having found nothing up-

·on which a reversal should be ordered, the judgment of the city court must be affrmed.

Affirmed.

WEAKLEY, C. J., and HARALSON, TYSON, SIMPSON, and ANDERSON, JJ., concur.